**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CIVIL ACTION NO. 3:22-CV-00317-CHB-CHL**

**ANGEL E.,[1]**  **Plaintiff,**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**  **Defendant.**

**REPORT AND RECOMMENDATION**

Before the Court is the Complaint filed by Plaintiff Angel E. ("Claimant"). Claimant seeks judicial review of the final decision of the Commissioner of Social Security ("the Commissioner"). (DN 1.) This case was referred to the undersigned Magistrate Judge to prepare a report and recommendation. (DN 10.) Claimant and the Commissioner each filed a Fact and Law Summary. (DNs 11, 13.) Therefore, this matter is ripe for review.

For the reasons set forth below, the undersigned recommends that the final decision of the Commissioner be **AFFIRMED**.

**I.     FINDINGS OF FACT**

On or about October 15, 2018, and October 12, 2018, respectively, Claimant filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") alleging disability beginning on January 1, 2018.[2] (R. at 23, 81, 90, 97, 105, 114, 146, 250-65.) On December 1, 2020, Administrative Law Judge ("ALJ") Dwight Wilkerson ("the ALJ") was scheduled to conduct a hearing on Claimant's applications, but the hearing was continued to allow Claimant time to obtain a representative. (*Id.* at 71-80.) The ALJ conducted a hearing on

---

[1] Pursuant to General Order 23-02, the Plaintiff in this case is identified and referenced solely by first name and last initial.
[2] While some of the documents in the record suggest a September 30, 2019, filing date for Claimant's DIB application, any discrepancy is not outcome determinative here given the ALJ's other findings. (*Id.* at 130, 273-74.)

Claimant's applications with Claimant's representative present on April 8, 2021. (*Id.* at 49-70.) In a decision dated May 24, 2021, the ALJ engaged in the five-step sequential evaluation process promulgated by the Commissioner to determine whether an individual is disabled. (*Id.* at 20-48.) In doing so, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2021. (*Id.* at 26.)

2. There has been no continuous 12-month period in which the claimant engaged in substantial gainful activity, though she did engage in substantial gainful activity during the following periods: the 2nd through 4th quarters of 2018 and the 1st and 3rd quarters of 2019. (*Id.*)

3. In noting there appears to be a continuous 12-month period during which the claimant did not engage in substantial gainful activity, the undersigned accordingly elects to continue the sequential evaluation process. (*Id.* at 27.)

4. [B]ased on the Title XVI application filed December 2, 2003, the claimant was awarded supplemental security income benefits in a hearing decision of January 13, 2006 as a disabled child functionally equaling the listings secondary to attention deficit hyperactivity disorder, borderline IQ and learning disorder. Continuing disability reviews on October 28, 2010[,] and October 8, 2014, respectively, continued benefits due to attention deficit hyperactivity disorder and mood disorders. Thereafter following age 18 redetermination, benefits were ceased July 11, 2018, at which time it was determined the claimant had non-severe diabetes mellitus but severe Mild Intellectual Disorder (Full Scale IQ 70) and attention deficit hyperactivity disorder with moderate limitation in understanding, remembering or applying information; mild limitation in interacting with others[;] moderate limitation in concentration, persistence and pace; and mild limitation in adapting or managing oneself. (*Id.*)

5. In connection with the current claim, the claimant has the following severe impairments: type 1 diabetes, obesity, attention deficit disorder, depressive disorder, anxiety, and mild intellectual disorder. (*Id.*)

6. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (*Id.* at 28.)

7. [T]he claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except with no climbing of ladders, ropes, and scaffolds. The individual should also avoid

       concentrated exposure to hazards, unprotected heights and dangerous moving machinery. The individual is able to perform simple, routine tasks requiring little or no independent judgement and involving minimal variations, can interact as needed with supervisors and peers and occasionally with the public, and can adapt to occasional changes in a routine work setting. (*Id.* at 32.)

8. The claimant is unable to perform any past relevant work. (*Id.* at 39.)

9. The claimant . . . was 18 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. (*Id.*)

10. The claimant has at least a high school education. (*Id.*)

11. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled. (*Id.*)

12. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she can perform. (*Id.*)

13. The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2018, through the date of this decision. (*Id.* at 40.)

Claimant subsequently requested an appeal to the Appeals Council, which denied her request for review on April 11, 2022. (*Id.* at 1-7, 247-49.) At that point, the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 422.210(a) (2022); *see also* 42 U.S.C. § 405(h) (discussing finality of the Commissioner's decision). Pursuant to 20 C.F.R. § 422.210(c), Claimant is presumed to have received that decision five days later. 20 C.F.R. § 422.210(c). Accordingly, Claimant timely filed this action on June 14, 2022. (DN 1.)

## II.   CONCLUSIONS OF LAW

The Social Security Act authorizes payments of DIB and SSI to persons with disabilities. *See* 42 U.S.C. §§ 401-434, 1381-1383f. An individual shall be considered "disabled" if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can

be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a) (2022).

### A. Standard of Review

The Court may review the final decision of the Commissioner but that review is limited to whether the Commissioner's findings are supported by "substantial evidence" and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). "Substantial evidence" means "more than a mere scintilla"; it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Court must "affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would also have supported the opposite conclusion." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013); *see Smith v. Sec'y of Health & Hum. Servs.*, 893 F.2d 106, 108 (6th Cir. 1989) (holding that if the Court determines the ALJ's decision is supported by substantial evidence, the court "may not even inquire whether the record could support a decision the other way"). However, "failure to follow agency rules and regulations" constitutes lack of substantial evidence, even where the Commissioner's findings can otherwise be justified by evidence in the record. *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).

### B. Five-Step Sequential Evaluation Process for Evaluating Disability

The Commissioner has promulgated regulations that set forth a five-step sequential evaluation process that an ALJ must follow in evaluating whether an individual is disabled. 20 C.F.R. §§ 404.1520, 416.920 (2022). In summary, the evaluation process proceeds as follows:

(1) Is the claimant involved in substantial gainful activity? If the answer is "yes," the claimant is not disabled. If the answer is "no," proceed to the next step.

4

>   (2)   Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement[3] and significantly limits his or her physical or mental ability to do basic work activities? If the answer is "no," the claimant is not disabled. If the answer is "yes," proceed to the next step.
>
>   (3)   Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within 20 C.F.R. Part 404, Subpart P, Appendix 1? If the answer is "yes," the claimant is disabled. If the answer is "no," proceed to the next step.
>
>   (4)   Does the claimant have the residual functional capacity ("RFC") to return to his or her past relevant work? If the answer is "yes," then the claimant is not disabled. If the answer is "no," proceed to the next step.
>
>   (5)   Does the claimant's RFC, age, education, and work experience allow him or her to make an adjustment to other work? If the answer is "yes," the claimant is not disabled. If the answer is "no," the claimant is disabled.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The claimant bears the burden of proof with respect to steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). However, the burden shifts to the Commissioner at step five to prove that other work is available that the claimant is capable of performing. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008). The claimant always retains the burden of proving lack of RFC. *Id.*; *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999).

####   C.   Claimant's Contentions

Claimant challenged the ALJ's numerical finding no. 7 regarding Claimant's RFC. (DN 11; DN 11-1, at PageID # 2242.) Claimant argued that in formulating that RFC, the ALJ did not follow the rules set forth in 20 C.F.R. §§ 404.1520c, 416.920c for evaluating opinion evidence and that his discussion of the persuasiveness he assigned to the opinions of consultative examiners

---

[3] To be considered, an impairment must be expected to result in death or have lasted/be expected to last for a continuous period of at least twelve months. 20 C.F.R. §§ 404.1509, 416.909 (2022).

Ruth K. Bewley, Ph.D., ("Dr. Bewley") and Richard L. Klem, Ph.D., ("Dr. Klem") was procedurally deficient because it did not contain a sufficient articulation regarding the consistency and supportability factors the ALJ was required by those regulations to discuss in his opinion.[4] (DN 11-1, at PageID # 2251-57.)

The new regulations for evaluating medical opinions are applicable to Claimant's case because she filed her application after March 27, 2017. Pursuant to 20 C.F.R. §§ 404.1520c, 416.920c, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)" in the record regardless of its source.[5] 20 C.F.R. §§ 404.1520c(a), 416.920c(a) (2022). Instead, an ALJ will evaluate the "persuasiveness" of a medical opinion by reference to the five factors listed in the regulation: supportability, consistency, relationship with the claimant, specialization, and other factors. 20 C.F.R. § 404.1520c(a), (c); 20 C.F.R. § 416.920c(a), (c). The regulations provide that the two most important factors are supportability and consistency and that an ALJ is required to "explain how [he or she] considered the supportability and consistency factors for a medical source's medical opinions." 20 C.F.R. § 404.1520c(a), (b)(2); 20 C.F.R. § 416.920c(a), (b)(2). However, the regulations state that "it is not administratively feasible for [an ALJ] to articulate in each determination or decision how [he or she] considered all of the factors for all of the medical opinions . . . in [the] case record"; thus,

---

[4] The headings in Claimant's brief alleged generally that the ALJ's "mental RFC determination [wa]s not supported by substantial evidence," but the only specific argument she articulated under that heading was that regarding the legal error she claimed the ALJ committed in his treatment of the opinion evidence. (DN 11-1, at PageID # 2242, 2251.) Other than some discussion generally of a subset of the medical evidence in her presentation of the facts, Claimant made no specific argument regarding the weight the ALJ attributed to the medical evidence of record. She likewise did not argue that there were particular pieces of or categories of evidence the ALJ failed to consider. Without some more well-defined argument, the undersigned concludes that Claimant has waived any general challenge to the ALJ's determination of Claimant's mental RFC and assessment of the other evidence of record outside the two opinions she specifically referenced. *See United States v. Layne*, 192 F.3d 556, 566-67 (6th Cir. 1999) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (finding that issues adverted to in a "perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived"); *Rice v. Comm'r of Soc. Sec.*, 169 F. App'x 452, 454 (6th Cir. 2006).

[5] This language indicates that the new regulations have done away with the controlling weight and other old rules regarding the weight to be ascribed to medical opinions. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (2022).

an ALJ is not required to explicitly discuss how he or she weighed the factors of relationship with the claimant,[6] specialization, and other factors.[7] 20 C.F.R. §§ 404.1520c(b)(1)-(2), 416.920c(b)(1)-(2). Where two medical opinions reach different conclusions but are equally "well-supported . . . and consistent with the record," the ALJ is required to state how he or she considered the other three factors in making his or her decision. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

The Sixth Circuit has not elucidated a specific standard to determine whether an ALJ sufficiently complied with the requirement to "articulate how [he or she] considered the medical opinions" and "explain how [he or she] considered the supportability and consistency factors" under the new regulations. 20 C.F.R. §§ 404.1520c(b), 416.920c(b). *But see Deaner v. Comm'r of Soc. Sec.*, 840 F. App'x 813, 822 (6th Cir. 2020) (White, J. dissenting) (applying the new regulations and finding that "[t]he ALJ did not clearly analyze the supportability and consistency of the state consultants' assessments, as compared to other evidence in the record which supported [the plaintiff]'s claims"). However, district courts applying the new regulations within this circuit consistently apply the articulation requirement literally. *See, e.g.*, *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 909 (E.D. Mich. 2021) ("The administrative adjudicator has the obligation in the first instance to show his or her work, i.e., to explain in detail *how the factors actually were applied* in each case, to each medical source. Resorting to boilerplate language to support a finding of unpersuasiveness does not satisfy that obligation." (emphasis in original)); *White v. Comm'r of*

---

[6] In assessing this factor, the regulations require an ALJ to consider the length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship. 20 C.F.R. §§ 404.1520c(c)(3), 416.920c(c)(3).

[7] The regulations provide that an ALJ will consider any "other factors that tend to support or contradict a medical opinion." 20 C.F.R. §§ 404.1520c(c)(5), 416.920c(c)(5). These factors include, but are not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim," "whether new evidence [ ] receive[d] after the medical source made his or her medical opinion . . . makes the medical opinion . . . more or less persuasive," and whether the medical source has "an understanding of [the] disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c)(5), 416.920c(c)(5).

*Soc. Sec.*, No. 1:20-CV-00588-JDG, 2021 WL 858662, at *21 (N.D. Ohio Mar. 8, 2021) ("Although the new standards are less stringent in their requirements for the treatment of medical opinions, they still require that the ALJ provide a coherent explanation of [her] reasoning."); *Lester v. Saul*, No. 5:20-CV-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No. 5:20-CV-1364, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021) (finding that "the [new] regulations do require that the ALJ clearly explain his consideration of the opinions and identify the evidence supporting his conclusions").

As part of his RFC determination, the ALJ summarized the objective findings from both Dr. Bewley's and Dr. Klem's examinations. (R. at 34-36.) Regarding Dr. Bewley's April 17, 2018, examination of Claimant, the ALJ noted that Dr. Bewley documented a Wechsler Adult Intelligence Scale-IV Full Scale IQ score of 70, which was consistent with "mild intellectual disability." (*Id.* at 34.) However, the ALJ also noted that Dr. Bewley's "exam indicated no more than mild to moderate limitations and was used in part to support the age 18 redetermination finding the claimant no longer disabled." (*Id.* at 34-35.) Regarding Dr. Klem's October 13, 2019, examination of Claimant, the ALJ summarized that Dr. Klem "assessed moderate to marked limitations in all aspects of mental functioning" but stated, "The suggestion of marked limitations is not persuasive in light of the claimant's clinical presentation, other overall evidence of record, and her self-described activities of daily living." (*Id.* at 35.) In support of this conclusion and his overall RFC analysis, the ALJ analyzed Claimant's testimony regarding her part time work at McDonalds, special education classes, "severe reading and writing difficulties as an adult," depression diagnosis, and post traumatic stress disorder. (*Id.*) He emphasized her reports of "living in an apartment with her three-year old son," being able to take care of her grooming and

hygiene, doing childcare, grocery shopping, preparing food, and attending church and medical appointments. (*Id.*) He summarized at length the objective findings from Dr. Klem's examination before noting that "Dr. Klem diagnosed unspecified depressive disorder; post traumatic stress disorder; and mild intellectual disability." (*Id.*) He noted that Dr. Klem found moderate/marked limitations in "claimant's ability to understand and retain simple one or two-step instructions and work-like procedures, her ability for sustained concentration of [*sic*] persistence to complete tasks in a timely fashion, and her ability to adapt to pressures and changes normally found in the day-to-day work setting." (*Id.* at 36.) He also noted that Dr. Klem found Claimant's ability to engage in social interaction was affected by a marked limitation. (*Id.*) He then summarized Claimant's mental health treatment records as well her presentation on a subsequent consultative evaluation. (*Id.* at 36-37.) He found that Claimant's "mental health treatment records repeatedly indicate[d] no more than mild to moderate functional limitations." (*Id.* at 36.) He also observed that Claimant's "exams at primary care, endocrinology, the ER, and other treatment facilities" did not support her claimed level of mental impairment. (*Id.* at 37.) He summarized that "[C]laimant's overall mental health treatment ha[d] been conservative and largely consist[ed] of outpatient counseling, where [ ] her mood ha[d] generally been assessed as euthymic"; her affect was congruent; psychosis or impaired thought content was not documented; and her memory, insight, and judgment were generally intact. (*Id.*) He noted that she "ha[d] not required psychiatric admission, nor crisis stabilization." (*Id.*) He emphasized that she "ha[d] at times performed work activity at substantial gainful activity levels and that such work seems to have involved fairly constant interaction with others, including the public." (*Id.*) The ALJ then returned to the opinion evidence and explained regarding the persuasiveness of Dr. Bewley's and Dr. Klem's opinions,

> The October 2019 consultative opinion of Dr. Klem in Ex. B11F is not persuasive for marked limitations, but rather is persuasive for generally moderate restrictions

9

> in all aspects of the B criteria. This conclusion is supported by the level of conservative and at times episodic mental health treatment the claimant has received during the relevant period, with no documentation of any significant decompensations or need for inpatient treatment or crisis intervention. Again, aside from intermittent depression and anxiety with some inattentiveness, mental status exams otherwise have generally been within normal limits. Moreover, throughout the relevant period, the claimant's activities of daily living have been fairly routine and varied, and inconsistent with an individual having marked limitations in functioning. The April 2018 consultative exam opinion of Dr. Bewley in Ex. B2F is more persuasive, as it portrays a level of functioning more consistent with the objective record and the claimant's self-described activities of daily living[.]

(*Id.* at 38.)

Referencing only the above block-quoted language, Claimant argued that the ALJ's decision did not comport with the requirements of 20 C.F.R. §§ 404.1520c, 416.920c because the ALJ did not discuss either the supportability or consistency factors as to Dr. Bewley and did not discuss the supportability factor as to Dr. Klem as required by those regulations. (DN 11-1, at PageID # 2253-55.) The undersigned disagrees. Claimant's argument too narrowly construes the ALJ's discussion of Dr. Klem's and Dr. Bewley's opinions to the one paragraph quoted above when the same must be considered in light of his overall discussion of Claimant's RFC and those opinions.

20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1) explain regarding "supportability," "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). Regarding "consistency," those regulations explain that "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). As to both Dr. Bewley's and Dr. Klem's opinions, when considered as a whole, the ALJ's discussion encompassed both

factors as required. The ALJ discussed their objective findings in making his analysis, which speaks to the supportability of those opinions. He also compared those opinions to the other evidence of record in making his determination, which speaks to the consistency of the same. The ALJ may not have used the words "consistency" or "supportability," but his discussion incorporates those issues in the context of his assessment of the overall record in such a way that a reviewing court can trace the path of his reasoning without speculation. The undersigned finds this discussion is sufficient to comply with the applicable regulation. Claimant also argued that the ALJ's analysis of Dr. Bewley's opinion was improper because the ALJ found her opinion persuasive but did not adopt her proposed restrictions. (DN 11-1, at PageID # 2253, 2255.) But Claimant presented no authority requiring an ALJ who finds an opinion persuasive to adopt it verbatim. In fact, the opposite is true: "an ALJ need not adopt a medical opinion verbatim, even if he found it persuasive." *Bryson v. Comm'r of Soc. Sec.*, No. 3:20-CV-667-CHB, 2022 WL 945318, at *4 (W.D. Ky. Mar. 29, 2022) (citing *Reeves v. Comm'r of Soc. Soc.*, 618 F. App'x 267, 275 (6th Cir. 2015), and *Green v. Comm'r of Soc. Sec.*, No. 2:20-cv-232, 2020 WL 4877187, at *6 (S.D. Ohio Aug. 20, 2020)). Under these circumstances, the undersigned finds that the ALJ committed no legal error in his assessment of the opinions of Dr. Bewley and Dr. Klem; thus, the Claimant has failed to demonstrate reversible error.

### III. RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that the final decision of the Commissioner be **AFFIRMED**.

cc:     Counsel of Record

#### Notice

Pursuant to 28 U.S.C. § 636(b)(1)(B)-(C), the undersigned Magistrate Judge hereby files with the Court the instant findings and recommendations. A copy shall forthwith be electronically transmitted or mailed to all Parties. 28 U.S.C. § 636(b)(1)(C). Within fourteen (14) days after being served, a party may serve and file specific written objections to these findings and recommendations. Fed. R. Civ. P. 72(b)(2). Failure to file and serve objections to these findings and recommendations constitutes a waiver of a party's right to appeal. *Id.; United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981); *see also Thomas v. Arn,* 474 U.S. 140 (1985).